IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| C.R. BARD, INC. and<br>BARD PERIPHERAL VASCULAR, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ANGIODYNAMICS, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  C.A. No. _____<br>)<br>)  **DEMAND FOR JURY TRIAL**<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively "Bard" or "Plaintiffs") hereby demand a jury trial and allege the following against Defendant AngioDynamics, Inc. ("Defendant" or "AngioDynamics"):

## NATURE OF THE ACTION

1. This is an action for infringement of U.S. Patent Nos. 8,025,639 ("the '639 patent"), 9,603,992 ("the '992 patent"), and 9,603,993 ("the '993 patent") under the patent laws of the United States, 35 U.S.C. § 100, *et seq.* arising from AngioDynamics' and its customers' manufacture, use, sale, offer for sale and/or importation of power injectable vascular access port and power injectable infusion sets.

## PARTIES

2. C. R. Bard, Inc. is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located at 1 Becton Drive, Franklin Lakes, New Jersey 07417.

3. Bard Peripheral Vascular, Inc. is a corporation organized and existing under the laws of the State of Arizona with its principal place of business located at 1625 West 3rd Street,

Tempe, Arizona, 85281. Bard Peripheral Vascular, Inc. is a wholly owned subsidiary and operating division of C.R. Bard, Inc.

4. On information and belief, AngioDynamics, Inc. ("Defendant") is a corporation organized under the laws of the State of Delaware and has its principal place of business at 14 Plaza Drive, Latham, NY 12110. Defendant makes, sells, offers for sale, and/or uses medical products, including implantable port products and infusion set products throughout the United States, including within this District.

## JURISDICTION AND VENUE

5. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271, which gives rise to the remedies specified under 35 U.S.C. §§ 281 and 283-285.

6. This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over AngioDynamics because, *inter alia*, AngioDynamics is a corporation organized and existing under the laws of the State of Delaware.

8. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b) because, *inter alia*, AngioDynamics is a corporation organized and existing under the laws of the State of Delaware.

## THE PATENTS-IN-SUIT

9. On September 27, 2011, the PTO duly and legally issued U.S. Patent No. 8,025,639 ("the '639 patent") entitled "Methods of power injecting a fluid through an access port." A true and accurate copy of the '639 patent is attached hereto as Exhibit 1.

10.     On March 28, 2017, the PTO duly and legally issued U.S. Patent No. 9,603,992 ("the '992 patent") entitled "Access Port identification Systems and Methods." A true and accurate copy of the '992 patent is attached hereto as Exhibit 2.

11.     On March 28, 2017, the PTO duly and legally issued U.S. Patent No. 9,603,993 ("the '993 patent") entitled "Access Port identification Systems and Methods." A true and accurate copy of the '993 patent is attached hereto as Exhibit 3.

12.     Plaintiffs are the owner by assignment of the '639 patent, the '992 patent and the '993 patent (collectively, "the Asserted Patents").

## ANGIODYNAMICS' ACCUSED PRODUCTS

13.     AngioDynamics makes, uses, imports, offers to sell, and/or sells venous access ports (collectively, the "Accused Port Products"), available, e.g., at https://www.angiodynamics.com/product-categories/ports/ and include, but are not limited to, the Smart Port® products (Smart Port® CT power-injectable port, Smart Port® CT low-profile power injectable port, Smart Port® CT Mini power-injectable port, the BioFlo Ports with Endexo technology, and the Xcela Plus ports.

14.     Literature describing the Smart Port® access ports is available at https://www.angiodynamics.com/product/smart-port-ct-injectable-port/.  Exhibit 4 is a true and correct copy of the literature available at https://www.angiodynamics.com/wp-content/uploads/2020/10/Smart_Port_Power-Injectable_Port_Promotional_Literature-738739.pdf.  Exhibit 5 is a true and correct copy of the literature available at https://www.angiodynamics.com/wp-content/uploads/2020/10/Smart_Port_Power-Injectable_Port_Poster-999204.pdf.  Exhibit 6 is a true and correct copy of the literature available at https://www.angiodynamics.com/product/smart-port-ct-injectable-port/.  Exhibit 7 is a true and

correct copy of the literature available at https://www.angiodynamics.com/wp-content/uploads/2020/10/Smart_Port_Tech_Note-991551.pdf.  Exhibit 8 is a true and correct copy of the literature available at https://www.angiodynamics.com/wp-content/uploads/2020/10/LifeGuard_Promotional_Literature-614411.pdf.  Exhibit 9 is a true and correct copy of the literature available at https://www.angiodynamics.com/wp-content/uploads/2020/10/SmartPort_Patient_Education_Packet_14656995-01A-399816.pdf.

15. Literature describing the BioFlo Ports with Endexo technology is available at https://www.angiodynamics.com/product/bioflo-ports-with-endexo-technology/.

16. Literature describing the Xcela Plus ports is available at https://www.angiodynamics.com/product/xcela-plus-ports/.

17. The AngioDynamics Accused Port Products are each access ports that are implanted subcutaneously. These ports are capable of identification after implantation. The AngioDynamics Accused Port Products each include several structural features, including at least a body, a septum, multiple side surfaces, and a bottom surface. The bottom surfaces of each of the AngioDynamics Accused Port Products include a message observable via imaging technology subsequent to implantation of the access port. The AngioDynamics Accused Port Products each are power injectable.

18. AngioDynamics makes, uses, imports, offers to sell, and/or sells infusion sets or components for use with its venous access ports (collectively, the "Accused Infusion Set Products"), available e.g. at https://www.angiodynamics.com/product/vascular-accessories-and-supplies/, and including but not limited to, the LifeGuard™ safety infusion set (https://www.angiodynamics.com/wp-

content/uploads/2020/10/LifeGuard_Promotional_Literature-614411.pdf), and the LifePort® infusion sets.

**FIRST CAUSE OF ACTION**
**(Patent Infringement of the '639 Patent)**

19. Plaintiffs reallege and incorporate paragraphs 1–18 as though fully set forth herein.

20. Defendant has infringed, and continues to infringe, literally or under the doctrine of equivalents, the '639 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, Accused Port Products and Accused Infusion Set Products (collectively the "Accused Products") that, when used according to their instructions for use, practice at least claim 10 of the '639 patent. Such Accused Products include implantable port products including, for example, Smart Port products, as well as infusion sets, including for example LifeGuard Safety Infusion Set products.

21. On information and belief, Defendant has performed a method of power injecting a fluid through an access port, including the step of implanting an access port into a patient, through its own use and testing of the Accused Products such as Smart Port and LifeGuard Safety Infusion Set products. *See* Exhibit 9.

22. On information and belief, the Accused Products include access ports suitable for passing fluid therethrough at a rate of at least 1 milliliter per second. *See* Exhibit 6 ("these ports are clinically indicated for power-injections up to 5mL/sec and a 300 psi pressure limit setting").

23. On information and belief, the Accused Products include an access port with a body defining a cavity, a septum, and an outlet in fluid communication with the cavity. *See* Exhibit 4:



24. On information and belief, the body and septum of the Accused Product port are structured for accommodating a pressure developed within the cavity of at least 35 psi. *See* Exhibit 6 ("these ports are clinically indicated for power-injections up to 5mL/sec and a 300 psi pressure limit setting").

25. On information and belief, the Accused Infusion Set Products, e.g., the LifeGuard Safety Infusion Set, include a non-coring needle having a burst pressure of at least 100 psi; a polymer tubing in fluid communication with the needle, the tubing having a burst pressure of at least 100 psi; and a connector having an inner surface affixed to an outer surface of the tubing, the connector having a burst pressure of at least 100 psi. *See* Exhibit 4. For example, on information and belief, Defendant uses the LifeGuard Safety Infusion Set with the Smart Port product, which is designed to accommodate power-injections up to 300 psi. *See* Exhibit 6 ("these ports are clinically indicated for power-injections up to 5mL/sec and a 300 psi pressure limit setting"). Thus, on information and belief, the components of the Accused Infusion Set Products, e.g., the LifeGuard Safety Infusion Set, are designed to accommodate the same pressure limits.

26. On information and belief, Defendant performs the step of flowing a fluid through the Accused Infusion Set Products into the Accused Port Products at a rate of at least 1 milliliter per second. For example, Defendant uses the Smart Port and LifeGuard Safety Infusion Set products for power injection procedures during which fluid is flowed through the port at a rate of up to 5 milliliters per second. *See* Exhibit 6.

27. In addition to directly infringing the '639 patent, Defendant has infringed and continues to infringe the '639 patent indirectly, including by actively inducing others to directly infringe the '639 patent in violation of 35 U.S.C. § 271(b).

28. Defendant has had knowledge of the '639 patent since at least as early as September 10, 2012, by virtue of Plaintiffs' counsel informing Defendant's counsel that Plaintiffs intended to assert the '639 patent in what is now C.A. 20-1544 (CFC). (C.A. 20-1544, D.I. 78, at 4). Separately, Defendant has had knowledge of the '639 patent since at least as early as December 6, 2016, when Defendant identified the '639 patent on an Information Disclosure Statement filed in U.S. Patent Application No. 13/852,436. Separately Plaintiffs' counsel again informed Defendant's counsel that Plaintiffs intended to assert the '639 patent on January 12, 2021. *See* Exhibit 10.

29. Despite Defendant's knowledge of the '639 patent, as well as Plaintiffs' allegations of infringement, Defendant has actively induced and continues to actively induce others to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, Accused Products in a manner that infringes one or more claims of the '639 patent. Such Accused Products include for example the Smart Port products and LifeGuard Safety Infusion Set products.

30. For example, in addition to Defendant's own direct infringement of the '639 patent, Defendant's customers, including radiologists, physicians, nurses, surgeons, medical technicians,

and other medical professionals, on information and belief, are directly infringing the '639 patent through their use of Accused Products, for example, the Smart Port and LifeGuard Safety Infusion Set products according to the instructions for use included with the Accused Products.

31. On information and belief, Defendant has knowingly induced such infringement of the '639 patent and has done so with specific intent to induce such infringement, including through activities relating to instructions for use, marketing, advertising, promotion, support, and distribution of the Accused Products, for example Smart Port and LifeGuard Safety Infusion Set products.

32. On information and belief, Defendant provides materials that instruct its customers on how to use the Smart Port products and LifeGuard Safety Infusion Set products, including, for example Instructions for Use. On information and belief, Defendant's Smart Port products and LifeGuard Safety Infusion Set products are intended to facilitate frequent blood sampling or the delivery of medications, nutrition, blood products and power injection of contrast media for imaging." On information and belief, Defendant further provides instructions to its customers for implantation of its power ports and Instructions for Use, which inform its customers on how to use Defendant's Accused Port Products, such as Smart Port products, and Accused Infusion Set Productions, such as the LifeGuard Safety Infusion Set products for power injection.

33. Moreover, Defendant markets these products to its customers as identifiable under X-ray or scout scan through visualization of the CT markings located on the bottom of the port.

34. Defendant further provides instructions to its customers for use of the Accused Port Products, such as the Smart Port products, and the Accused Infusion Set Products, such as the LifeGuard Safety Infusion Set, in power-injection procedures in which an access port is implanted

into a patient, an infusion set is provided, and fluid is passed through the infusion set into the access port at a rate of at least 1 milliliter per second. *See* Exhibits 4 and 6.

35. Defendant actively publicizes such promotional and instructional materials for the Accused Products including the Smart Port and LifeGuard Safety Infusion Set products through numerous means, including through its website http://www.angiodynamics.com/. Specific examples of these materials can be found on Defendant's website. *See e.g.* Exhibits 4-9.

36. In addition to directly infringing and inducing infringement of the '639 patent, Defendant has infringed and continues to infringe the '639 patent indirectly, including by contributing to infringement of the '639 patent in violation of 35 U.S.C. § 271(c).

37. Defendant contributes to the infringement of one or more claims of the '639 patent by, for example, providing and selling within the United States or importing into the United States the Accused Products including at least its Smart Port and LifeGuard Safety Infusion Set products.

38. The Accused Products, for example, the Smart Port and LifeGuard Safety Infusion Set products are each an apparatus for use in practicing the patented process recited in at least claim 10 of the '639 patent as detailed above in paragraphs 19 through 26. The Accused Products, for example the Smart Port and LifeGuard Safety Infusion Set products are each a non-staple article designed and used for power-injection procedures that satisfy each and every step of the patented process recited in at least claim 10 of the '639 Patent, and the Accused Products do not have substantial non-infringing uses.

39. Bard has complied with the requirements of 35 U.S.C. § 287 by, among other things, virtual marking its products with the number of the '639 patent (*see* http://www.bardaccess.com/ip) and by giving actual notice to AngioDynamics no later than September 10, 2012 and a second time on January 12, 2021. *See* Exhibit 10.

40. Defendant's infringement of the '639 patent has been and continues to be willful and deliberate. Despite Defendant's knowledge of the '639 patent, and Defendant's knowledge of its infringement thereof, Defendant has continued making, using, selling, and offering for sale in the United States and/or importing into the United States Accused Products that are covered by one or more claims of the '639 patent. Such products include implantable port products, including, for example, Smart Port products and infusion sets, including, for example the LifeGuard Safety Infusion Set. Defendant's willful and deliberate infringement entitles Plaintiffs to enhanced damages under 35 U.S.C. § 284.

41. Unless and until enjoined by this Court, Defendant will continue to willfully infringe the '639 patent, both directly and indirectly. Defendant's infringement is causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law.

42. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

## SECOND CAUSE OF ACTION
### (Patent Infringement of the '992 Patent)

43. Plaintiffs reallege and incorporate paragraphs 1–42 as though fully set forth herein.

44. Defendant has infringed, and continues to infringe, literally or under the doctrine of equivalents, the '992 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, Accused Port Products that are covered by one or more claims of the '992 patent. Such Accused Port Products include implantable port products including, for example, Smart Port products.

45. On information and belief, the Accused Port Products comprise a venous access port assembly suitable for power injection, comprising: a housing having an outlet and a needle-penetrable septum, the housing and septum together defining a reservoir, the housing defining a

bottom wall of the reservoir and an outwardly facing bottom surface, the bottom wall comprising a metal. *See e.g.* Exhibit 9 ("The Smart Port® power-injectable port is a small metal disc about 2 cm in diameter (the size of a nickel) with a slightly raised rubber injection site called the port septum"), and Exhibit 4:

[Figure: Smart Port® High-Performance Titanium Power-Injectable Ports are indicated up to 5mL/sec and 300 psi and are MRI-conditional—3 Tesla. Standard CT: Designed with a Vortex chamber for improved fluid dynamics. Blue boot strain-relief mechanism allows for placement flexibility and protects against catheter kinking. Silicone-filled suture holes available for ease of explants. Fluoromax radiopaque catheter silicone and polyurethane options. Atraumatic radiopaque tip.]

46.     On information and belief, the Accused Port Products comprise the venous access port assembly suitable for power injection, comprising a catheter configured for accessing a vein of a patient, the catheter having a lumen in communication with the outlet. *See e.g.* Exhibit 4:



47.     On information and belief, the Accused Port Products comprise a venous access port assembly suitable for power injection, comprising a radiopaque alphanumeric message observable via imaging technology subsequent to subcutaneous implantation of the venous access port assembly, the radiopaque alphanumeric message indicating that the venous access port assembly is suitable for power injection, the radiopaque alphanumeric message positioned on the outwardly facing bottom surface etched into the metal. *See e.g.* Exhibit 4 ("Smart Port® power-

injectable ports can be identified by the Smart Angle® identifier technology on the CT and CT Low-Profile power-injectable port models. The CT engraving on all models can be seen through chest X-ray or scout scan."), and Exhibit 4:




**Identifying a Smart Port Power-Injectable Port**

Smart Port power-injectable ports can be identified by the Smart Angle® technology on the CT and CT Low-Profile models. The CT engraving on all models can be identified through chest x-ray or CT Scout Scan. Each Smart Port patient receives an education packet—including an information booklet, ID card, key ring card and ID bracelet.

48.  In addition to directly infringing the '992 patent, Defendant has infringed and continues to infringe the '992 patent indirectly, including by actively inducing others to directly infringe the '992 patent in violation of 35 U.S.C. § 271(b).

49.  Despite Defendant's knowledge of the '992 patent, as well as Plaintiffs' allegations of infringement since no later than January 12, 2021, Defendant continues to actively induce others to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, Accused Port Products that are covered by one or more claims of the '992 patent. Such products include implantable port products, including, for example, Smart Port products.

50.  For example, in addition to Defendant's own direct infringement of the '992 patent, Defendant's customers, including radiologists, physicians, nurses, surgeons, medical technicians, and other medical professionals, on information and belief, are directly infringing the '992 patent through their use of Accused Port Products that are covered by one or more claims of the '992 patent, including, for example, the Smart Port products.

51. On information and belief, Defendant knowingly induces such infringement of the '992 patent and has done so with specific intent to induce such infringement, including through activities relating to marketing, advertising, promotion, support, and distribution of the Accused Port Products, including the Smart Port products.

52. On information and belief, Defendant provides materials that instruct its customers on how to use the Accused Port Products, such as Smart Port products, including, for example Instructions for Use. On information and belief, Defendant's Accused Products, such as Smart Port products are intended to facilitate frequent blood sampling or the delivery of medications, nutrition, blood products and power injection of contrast media for imaging." On information and belief, Defendant further provides instructions to its customers for implantation of its power ports and Instructions for Use, which inform its customers on how to use Defendant's Accused Port Products, including Smart Port products for power injection.

53. Moreover, Defendant markets these products to its customers as identifiable under X-ray or scout scan through visualization of the CT markings located on the bottom of the port.

54. Defendant actively publicizes such promotional and instructional materials for Accused Port Products including the Smart Port products through numerous means, including through its website http://www.angiodynamics.com/. Specific examples of these materials can be found on Defendant's website. *See e.g.*, Exhibits 4-9.

55. Bard has complied with the requirements of 35 U.S.C. § 287 by, among other things, virtual marking its products with the number of the '992 patent (*see* http://www.bardaccess.com/ip) and by giving actual notice to AngioDynamics no later than January 12, 2021. *See* Exhibit 10.

56. Defendant's infringement of the '992 patent has been and continues to be willful and deliberate. Despite Defendant's knowledge of the '992 patent, and Defendant's knowledge of its infringement thereof, Defendant has continued making, using, selling, and offering for sale in the United States and/or importing into the United States Accused Products that are covered by one or more claims of the '639 patent. Such products include implantable port products, including, for example, Smart Port products. Defendant's willful and deliberate infringement entitles Plaintiffs to enhanced damages under 35 U.S.C. § 284.

57. Unless and until enjoined by this Court, Defendant will continue to infringe the '992 patent, both directly and indirectly. Defendant's infringement is causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law.

58. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

## THIRD CAUSE OF ACTION
**(Patent Infringement of the '993 Patent)**

59. Plaintiffs reallege and incorporate paragraphs 1–58 as though fully set forth herein.

60. Defendant has infringed, and continues to infringe, literally or under the doctrine of equivalents, the '993 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, Accused Port Products that are covered by at least claim 1 of the '993 patent. Such Accused Port Products include implantable port products including, for example, Smart Port products.

61. On information and belief, the Accused Port Products comprise a power-injectable access port, comprising: a housing defining an internal cavity, a bottom wall of the internal cavity, and an outwardly facing bottom surface, the bottom wall comprising a metal, the housing including a plurality of suture apertures. *See e.g.* Exhibit 4:



62. On information and belief, the Accused Port Products comprise a power-injectable access port, comprising: a needle-penetrable septum captured by the housing enabling needle access to the internal cavity. *See e.g.* Exhibit 5:



63. On information and belief, the Accused Port Products comprise a power-injectable access port, comprising a stem and having a lumen in fluid communication with the internal cavity, the stem configured for coupling to a catheter. *See e.g.* Exhibit 4:

15



64.     On information and belief, the Accused Port Products comprise a power-injectable access port, comprising a radiopaque identification feature observable via imaging technology, the radiopaque identification feature positioned on the outwardly facing bottom surface etched into the metal, wherein subsequent to subcutaneous implantation of the power-injectable access port, the radiopaque identification feature conveys to an observer using the imaging technology that the power-injectable access port is suitable for power injection.  *See e.g.* Exhibit 4 ("Smart Port® power-injectable ports can be identified by the Smart Angle® identifier technology on the CT and CT Low-Profile power-injectable port models. The CT engraving on all models can be seen through chest X-ray or scout scan."); and Exhibit 4:



65. In addition to directly infringing the '993 patent, Defendant has infringed and continues to infringe the '993 patent indirectly, including by actively inducing others to directly infringe the '993 patent in violation of 35 U.S.C. § 271(b).

66. Despite Defendant's knowledge of the '993 patent, as well as Plaintiffs' allegations of infringement, since no later than January 12, 2021, Defendant continues to actively induce others to make, use, sell, and/or offer to sell in the United States, and/or import into the United States, Accused Port Products that are covered by one or more claims of the '993 patent. Such Accused Port Products include implantable port products, including, for example, Smart Port products.

67. For example, in addition to Defendant's own direct infringement of the '993 patent, Defendant's customers, including radiologists, physicians, nurses, surgeons, medical technicians, and other medical professionals, on information and belief, are directly infringing the '993 patent through their use of Accused Port Products that are covered by one or more claims of the '993 patent, including, for example, the Smart Port products.

68. On information and belief, Defendant is inducing such infringement of the '993 patent and has done so with specific intent to induce such infringement, including through activities relating to marketing, advertising, promotion, support, and distribution of the Accused Port Products, including for example Smart Port products.

69. On information and belief, Defendant provides materials that instruct its customers on how to use the Accused Port Products, such as Smart Port products, including, for example Instructions for Use. On information and belief, Defendant's Accused Products, such as Smart Port products are intended to facilitate frequent blood sampling or the delivery of medications, nutrition, blood products and power injection of contrast media for imaging." On information and

belief, Defendant further provides instructions to its customers for implantation of its power ports and Instructions for Use, which inform its customers on how to use Defendant's Accused Port Products, including Smart Port products for power injection.

70. Moreover, Defendant markets these products to its customers as identifiable under X-ray or scout scan through visualization of the CT markings located on the bottom of the port

71. Defendant actively publicizes such promotional and instructional materials for Accused Port Products including the Smart Port products through numerous means, including through its website http://www.angiodynamics.com/. Specific examples of these materials can be found on Defendant's website. *See e.g.* Exhibits 4-9.

72. Bard has complied with the requirements of 35 U.S.C. § 287 by, among other things, virtual marking its products with the number of the '993 patent (*see* http://www.bardaccess.com/ip) and by giving actual notice to AngioDynamics no later than January 12, 2021. *See* Exhibit 10.

73. Defendant's infringement of the '993 patent has been and continues to be willful and deliberate. Despite Defendant's knowledge of the '993 patent, and Defendant's knowledge of its infringement thereof, Defendant has continued making, using, selling, and offering for sale in the United States and/or importing into the United States Accused Products that are covered by one or more claims of the '639 patent. Such products include implantable port products, including, for example, Smart Port products. Defendant's willful and deliberate infringement entitles Plaintiffs to enhanced damages under 35 U.S.C. § 284.

74. Unless and until enjoined by this Court, Defendant will continue to infringe the '993 patent, both directly and indirectly. Defendant's infringement is causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law.

75. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in favor of Plaintiffs and prays that the Court grant the following relief to Plaintiffs:

A. Ruling that Defendant has directly, indirectly and willfully infringed the Asserted Patents;

B. Permanently enjoining Defendant, its affiliates and subsidiaries, and each of its officers, agents, servants and employees and those acting in privity or concert with it, from directly or indirectly infringing any of the claims of the Asserted Patents, and from causing or encouraging others to directly infringe the Asserted Patents, including without limitation implantable port products, until after the expiration date of the Asserted Patents, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or becomes entitled;

C. Awarding damages under 35 U.S.C. § 284 in an amount sufficient to compensate Plaintiffs for its damages arising from Defendant's direct and indirect infringement of the Asserted Patents, including, but not limited to, lost profits and/or a reasonable royalty, together with pre-judgment and post-judgment interest, and costs;

D. Awarding an accounting and/or supplemental damages for all damages occurring after any discovery cutoff and through the Court's decision regarding the imposition of a permanent injunction;

E. Declaring this case to be exceptional within the meaning of 35 U.S.C. § 285 and awarding Plaintiffs the attorney fees, costs, and expenses it incurs in this action;

F. An order awarding treble damages for willful infringement by Defendant, pursuant to 35 U.S.C. § 284;

G Awarding Plaintiffs such other and further relief as the Court deems just and proper.

## JURY DEMAND

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demands a trial by jury for all issues so triable.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | */s/ Jack B. Blumenfeld* |
| OF COUNSEL:<br><br>Steven C. Cherny<br>Matthew A. Traupman<br>QUINN EMANUEL URQUHART<br> & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>(212) 849-7000<br><br>March 8, 2021 | Jack B. Blumenfeld (#1014)<br>Brian P. Egan (#6227))<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>began@morrisnichols.com<br><br>*Attorneys for Plaintiffs C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.* |